<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LER MANAGEMENT LLC,<br>Plaintiff,<br><br>v.<br><br>DANIEL HUFF,<br>Defendant. | :<br>:  **Civil Action No. 26-03002 (SRC)**<br>:<br>:  **OPINION & ORDER**<br>:<br>:<br>: |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court on Defendant Daniel Huff's ("Defendant") motion to dismiss Plaintiff LER Management LLC's ("Plaintiff") Amended Complaint (Dkt. No. 16, "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) (Dkt. No. 26, "Motion"). Plaintiff field a brief in opposition to the Motion. (Dkt. No. 31, "Opposition"). Defendant filed a brief in reply. (Dkt. No. 32, "Reply"). For the following reasons, Defendant's Motion is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Complaint alleges the following relevant facts. In September 2024, Plaintiff, a Florida LLC, made two loans totaling $1.5 million to 21st Century AEYE LLC ("21st Century"), a Texas LLC. (Compl. ¶¶ 2, 34). The loans were secured by written security agreements granting Plaintiff a first-priority perfected security interest in substantially all of 21st Century's assets. (<u>Id.</u> ¶ 3). Plaintiff perfected its security interest by filing financing statements in Texas and California. (<u>Id.</u> ¶ 4). These loans helped facilitate 21st Century's acquisition of the business and operating assets

of Financial Technology Solutions International, Inc. ("Original FTSI").  (Id. ¶ 38, 39).  After acquiring Original FTSI in its entirety, 21st Century operated that business as a division referred to as "21st Century FTSI."  (Id. ¶ 39).  The assets and operations of 21st Century FTSI constituted Plaintiff's collateral against its loans.  (Id.).  The loans matured in September of 2025 and have yet to be paid.  (Id. ¶ 5).

After growing concerns about the financial health and integrity of 21st Century and not receiving all the financial information it requested from 21st Century, Plaintiff asked for an in-person meeting with 21st Century to address repayment, transparency, and the protection of the Collateral.  (Id. ¶¶ 40-44).  On July 10, 2025, Plaintiff met with Defendant, a New Jersey resident, and Lisa Huertas.   (Id. ¶ 45).  Plaintiff alleges that Defendant represented that he was acting as the authorized representative of 21st Century and/or Brannon Castleberry ("Castleberry").[1]  In that meeting, Defendant asked Plaintiff to extend maturities that were due in September of that year and forbear from enforcement.  In the course of the discussion, Defendant made at least five allegedly problematic statements about 21st Century's financial situation: (1) "we can pay any unhappy noteholder," (2) "cash is available now," (3) the "business is healthy," (4) the "pipeline is strong," and (5) "repayment can be made upon demand."  (Id. ¶¶ 47-48).  The crux of Plaintiff's Complaint is that Defendant made these statements knowing they were false and without fully contextualizing them by providing information about alleged fraud and diversion of funds occurring at 21st Century.  (Id. ¶¶ 49-52).

Plaintiff also alleges that after this meeting, Defendant engaged in further communications intended to negotiate an extension of the maturity dates of the loans Plaintiff had made.  (Id. ¶¶

---

[1] Castleberry's relationship to 21st Century is not clearly delineated in the Complaint but the Court understands him to have been "involved" with 21st Century's operations and Plaintiff was concerned that he was involved in diverting funds from 21st Century and otherwise engaging in fraudulent activity.

54-67).  Plaintiff never states that it agreed to extend maturity on the loans.  Instead, Plaintiff alleges that it "refrained from and/or postponed enforcement actions it otherwise would have taken earlier." (Id. ¶ 68).  Of note, Plaintiff filed a lawsuit against 21st Century and related parties in Florida state court on September 7, 2025, days before repayment of the loans was due.  (Dkt. No. 26-3, "Florida Complaint").

Plaintiff makes one other specific allegation against Defendant.  According to the Complaint, on or about August 6, 2025, "Castleberry, using 21st Century's QuickBooks/Intuit access linked to its JPMorgan Chase bank account, attempted to initiate an unauthorized transfer of approximately $130,000 from 21st Century's account to Defendant."  (Compl. ¶ 74).  Before the transfer could be completed, the manager and owner of 21st Century intervened and prevented any money from changing hands.  (Id. ¶¶ 76-77)

## II.    DISCUSSION

### a.  Legal Standards

Defendant asks this Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  In short, to survive dismissal, "a civil complaint must contain sufficient factual matter which plausibly alleges all required elements of a cause of action." Bresko v. Critchley, 2012 WL 3066640, at *4 (D.N.J. July 26, 2012).  On a Rule 12(b)(6) motion, the

Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations.  Iqbal, 556 U.S. at 678.

Because a motion to dismiss tests whether a complaint adequately pleads the elements of each claim, a court must first determine which jurisdiction's substantive law governs those claims. See Marcarelli v. Delaware Cnty. Mem'l Hosp., 1986 WL 10665, at *1 (E.D. Pa. Sept. 26, 1986) ("In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), our first step when sitting in diversity is: (1) to determine which state's law applies and (2) to determine the elements of the cause of action under the applicable state law.").  When sitting in diversity, "a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." Warriner v. Stanton, 475 F.3d 497, 499–500 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

Under New Jersey law, the choice of law analysis proceeds in two steps.  First, a "court must determine whether an actual conflict exists between the laws of the two states." Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 254 (3d Cir. 2010).  An "actual conflict" generally exists when the relevant laws of the competing states are so different from one another that the application of one state's law would lead to a different outcome than application of the other state's law.  See In re Accutane Litig., 235 N.J. 229, 254, 194 A.3d 503 (2018) ("A conflict of law arises when the application of one or another state's law may alter the outcome of the case . . . or when the law of one interested state is offensive or repugnant to the public policy of the other.") (quotation omitted).  If no actual conflict exists, "the inquiry is over," and the court applies New Jersey law. Cooper, 374 F. App'x at 254.  But, if the court does find an actual conflict, it proceeds to the second step which requires that it "weigh the factors in the Restatement

-4-

corresponding to the plaintiff's cause of action." Id.  Importantly, the party asserting that the law

of the non-forum state ought to apply bears the burden of showing an actual conflict.  Where such

party fails to meet its burden, a court applies the law of the forum state.  See Butera v. Honeywell

Int'l, Inc., 2019 WL 1760844, at *5 (D.N.J. Apr. 18, 2019) ("Generally, where a defendant fails to

meet their burden of demonstrating a conflict, a court applies the law of the forum state.").

### b.  Analysis

The Court will consider the various arguments in Defendant's application as follows.

#### i.  *Count 1: Common Law Fraud*

Defendant argues that Plaintiff's first claim, common law fraudulent inducement, should

be dismissed.  (See Mot. at 6-7).  This claim is primarily predicated on the following statements

allegedly made by Defendant at the July 10, 2026 meeting: "we can pay any unhappy noteholder,"

"cash is available now," the "business is healthy," the "pipeline is strong," and "repayment can be

made upon demand."  (Compl. ¶ 91).  The claim is also rooted in Defendant's alleged failure to

inform Plaintiff of certain facts relating to the fraud Plaintiff alleges occurred at 21st Century

during the relevant period.  (Id. ¶ 92).

As a preliminary matter, the Court must decide which state's law to apply to this claim.

Defendant urges the Court to apply Florida law and then to dismiss the claim for failure to satisfy

the requirements of fraud under Florida law.  But, because the Court finds that Plaintiff's fraud

claim fails under either New Jersey or Florida law, no actual conflict exists, and the Court applies

New Jersey law.  Cooper, 374 F. App'x at 254.

To establish common law fraud in New Jersey, "a plaintiff must prove: (1) a material

misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the

other person; and (5) resulting damages." Walid v. Yolanda for Irene Couture, Inc., 40 A.3d 85, 90 (App. Div. 2012) (citations omitted).

Plaintiff's fraud claim fails for multiple reasons. First, the Complaint does not plausibly allege that Huff's statements and negotiations were made with the "knowledge or belief" of their falsity. While Federal Rule of Civil Procedure 9(b) allows plaintiffs alleging fraud to plead scienter generally, "they must still allege specific facts that give rise to a strong inference that the defendant possessed the requisite intent." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) (citation omitted) (agreeing with the Second Circuit's more stringent approach to pleading scienter on fraud claims and departing from the Ninth Circuit's more permissive approach). Plaintiff fails to do so here.

Instead, Plaintiff describes Defendant's knowledge in merely conclusory manner, stating that Defendant "knew or was reckless in not knowing" that his statements at the July 10th meeting misrepresented the financial health of 21st Century, and that, "at a minimum, Defendant knew facts that materially contradicted his assurances of present liquidity, immediate repayment ability, and a healthy business." (Compl. ¶ 52). Defendant correctly points out that these statements are not accompanied by information that tells this Court: (1) what facts Defendant must have known which rendered his statements false or (2) or the basis of Plaintiff's belief that Defendant knew those facts. (See Mot. at 6). In fact, the Complaint does not even explain to the Court what Defendant's relationship with 21st Century is, making it even harder to infer what information Defendant may or may not have known.

The closest the Complaint comes to satisfying this requirement appears at the end of its factual allegations. There, Plaintiff provides two additional misstatements regarding the financial viability of 21st Century. Specifically, the Complaint alleges that "Defendant knew, or was

reckless in not knowing, that Huertas' related representations to Plaintiff and Jeffrey Dorman concerning an '$89 million pipeline' for AEYE Defend, '$28 million new revenue - 2025 pipeline for FTSI Solutions,' '$31 million in existing contracted revenue already secured for 2025,' and similar statements concerning profit margins and existing contracts were false or materially misleading." (Compl. ¶ 52). The Court finds that Plaintiff did not even allege that these statements were made by Defendant. Further, there are no plausible allegations that Defendant knew about, had ever heard of, or had anything to do with those statements allegedly made by other individuals, who are not parties to this suit.

Second, Plaintiff fails to plausibly allege that it reasonably and detrimentally relied on Defendant's alleged misstatements. In fact, it seems that Plaintiff specifically did *not* do the very thing that Defendant attempted to negotiate: extend the maturity dates of the loans at issue. (Compl. ¶¶ 45-67). Likely recognizing this issue with its Complaint, Plaintiff instead pleads that it relied on Defendant's statements by "delaying and tempering its enforcement and protective actions, including pursuing provisional remedies, issuing enforcement notices, taking steps to preserve the Collateral and proceeds, and commencing litigation earlier than it otherwise would have done." (Id. ¶ 97). This cannot plausibly be the basis for relief here because Plaintiff did, in fact, bring an action against 21st Century regarding these loans on September 7, 2025, days before repayment was even due. (Florida Complaint).[2] Absent an allegation of the loan agreements containing an acceleration clause or a showing of an anticipatory breach by 21st Century, it is not

---

[2] The Court notes that while it may not take judicial notice of the truth of the underlying factual averments in the Florida Complaint, it may take judicial notice of the fact that the litigation exists. See Cohen v. Telsey, 2009 WL 3747059, at *6 (D.N.J. Nov. 2, 2009) ("A district court may take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings and such documents may be used in the consideration of motions to dismiss under Rule 12.") (citations omitted).

clear to the Court what earlier action Plaintiff could have brought that would have changed its ultimate position.[3]

### ii. *Count 2: Aiding and Abetting Fraud*

Defendant argues that Count 2, alleging Defendant is liable for aiding and abetting fraud, should be dismissed because Plaintiff fails to adequately allege the facts that constitute the underlying fraud with particularity. (See Mot. at 7-9).

As a preliminary matter, the Court must decide which state's law to apply to this claim. The Court again finds that because the claim fails irrespective of whether New Jersey or Florida law applies, there is no conflict of law, thus the Court applies New Jersey law. Cooper, 374 F. App'x at 254.

To state a claim for aiding and abetting under New Jersey law, a plaintiff must allege: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." Tarr v. Ciasulli, 181 N.J. 70, 853 A.2d 921, 929 (2004). The Court notes that while Tarr arose in the specific context of a Law Against Discrimination (LAD) claim, New Jersey courts have since recognized that the aiding-and-abetting standard adopted therein also apply to non-LAD claims such as fraud. See State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 484 (App. Div. 2006). In the context of an aiding and abetting fraud claim, Plaintiff must also prove the underlying tort i.e. the alleged fraud. Id.

---

[3] Though the Court need not engage in a lengthy analysis of how the claim fares under Florida law, the Court briefly notes that Florida also requires a showing of scienter and detrimental reliance. See Prieto v. Smook, Inc., 97 So. 3d 916, 917 (Fla. Dist. Ct. App. 2012) (describing the elements of fraud under Florida law). Accordingly, Count 1 would fail just the same under Florida law as it does under New Jersey law.

As explained, supra, Plaintiff's allegation of the underlying fraud fails because Plaintiff fails to sufficiently plead that Defendant's statements and negotiations were made with the "knowledge or belief" of their falsity, and, further, because Plaintiff fails to plausibly allege that it reasonably and detrimentally relied on Defendant's alleged misstatements.    Thus, Plaintiff's Complaint fails to sufficiently plead an aiding and abetting fraud claim as its fail to adequately allege the underlying fraud.

Assuming, arguendo, that Plaintiff did adequately plead its claim alleging fraud, its aiding and abetting claim would nonetheless still fail.  First, the Complaint fails to allege facts that give rise to an inference that Defendant had knowledge of an underlying fraud.  Plaintiff's claims are limited to allegations that Defendant appeared at a meeting on Castleberry's behalf, sent emails concerning a draft extension, sent emails and text messages to set up a call with a lawyer for 21st Century, and was the intended recipient of a wire of funds that was never completed.  (Compl. ¶ 103; see also ¶¶ 44-65, 74-78).  Plaintiff only generally alleges that "Castleberry and insiders, including Huertas and De La Peña, committed underlying fraud by misrepresenting 21st Century's finances, valuation, revenue pipeline, and intended use of loan proceeds, and by diverting assets and operations pledged as Collateral to Plaintiff while concealing those actions." (Compl. ¶ 102). Plaintiff fails to allege with particularity what these alleged misrepresentations were, who made them, and when.  The allegations are insufficient for the Court to reasonably infer that Defendant had any knowledge of any underlying fraud, and similarly insufficient to establish that Defendant substantially assisted in the execution of the same.   Accordingly, Count 2 is dismissed.

### iii.  *Count 3: Aiding and Abetting Breach of Fiduciary Duty*

Defendant argues that Count 3, alleging Defendant is liable for aiding and abetting a breach of fiduciary duty, ought to be dismissed, simply because Texas law prohibits the maintenance of

such an action.  (See Mot. at 9-10).  While the Court agrees with Defendant that this claim should be dismissed, it agrees with Plaintiff that Defendant's approach to the analysis here is overly formalistic.  (See Opp. at 13-14).

As a preliminary matter, the Court agrees that Texas law applies to this claim under the "internal affairs" doctrine.  Fagin v. Gilmartin, 432 F.3d 276, 282 (3d Cir. 2005) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs.").

Plaintiff stylizes Count 3 as a claim for "aiding and abetting breach of fiduciary duty." (Compl. at 20).  Defendant appears to be correct in asserting that Texas law does not recognize a standalone cause of action for aiding and abetting a breach of fiduciary duty.  See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A., 800 F. App'x 239, 249 (5th Cir. 2020) ("[A]iding and abetting does not exist as a distinct cause of action in Texas.").  But, Texas law does recognize the existence of a cause of action for a "knowing participation in the breach of fiduciary duty".  See Milligan, Tr. for Westech Cap. Corp. v. Salamone, 2019 WL 4003093, at *1 (W.D. Tex. Aug. 23, 2019) ("Texas appellate courts have routinely recognized the existence of a cause of action for knowing participation in the breach of fiduciary duty.").  The Court, recognizing that a "complaint is sufficient against a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate," 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219 (4th ed. 2022), construes and considers this Count as a claim for "knowing participation in a breach of fiduciary duty."  Despite doing so, the Court still finds that Plaintiff has failed to plead a plausible claim under this legal theory and will dismiss Count 3.

Under Texas law, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." Milligan, 2019 WL 4003093, at *1; see Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 574 (1942). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." D'Onofrio v. Vacation Publications, Inc., 888 F.3d 197, 216 (5th Cir. 2018).

Here, Plaintiff fails to plead facts that plausibly demonstrate that Defendant was aware of a fiduciary duty and was knowingly involved in the breach of the same. The Complaint does not allege that Defendant participated in any of the specific acts that would constitute a breach of fiduciary duty by Castleberry, Huertas, or De La Peña. The Complaint only alleges that Defendant appeared at the July 10, 2025 meeting as Castleberry's representative, negotiated extension and forbearance terms, sent emails and text messages about potential extensions, and was the intended recipient of an attempted $130,000 transfer. (Compl. ¶¶ 45-67, 74-81, 110). These facts are insufficient for the Court to reasonable infer that Defendant knew of any fiduciary duties owed by Castleberry, Huertas, or De La Peña, let alone that Defendant was aware that those individuals were in breach of such duties. Absent factual allegations that Defendant was aware of both the fiduciary duty and the alleged breach, and that Defendant acted with knowledge to further that breach, the Court finds that Plaintiff has failed to state a claim for knowing participating in a breach of fiduciary duty under Texas law. Accordingly, Count 3 is dismissed.

### iv. *Count 4: Tortious Interference with Contract*

Defendant argues that Count 4, alleging tortious interference with contract, should be dismissed because Plaintiff fails to allege that Defendant acted in a manner that interfered with its contract with 21st Century.  (See Mot. at 10).  The Court agrees.

As a preliminary matter, the Court must decide which state's law to apply to this claim. Defendant urges the Court to apply New Jersey law because the result is in the same under both Florida and New Jersey law.  The Court agrees, and because no actual conflict exists, the Court applies New Jersey law.  Cooper, 374 F. App'x at 254.

To establish a claim for tortious interference of a contract in New Jersey, plaintiff must plead and ultimately prove: (1) actual interference with a contract; (2) intentional interference by a defendant who is not a party to the contract; (3) interference "without justification"; and (4) resulting damages.  Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty. Bank of N.J., 312 N.J. Super. 51, 66 (App. Div. 1998).

While it is clear that there are existing valid and enforceable contracts between Plaintiff and 21st Century, specifically the LER Notes and related security agreements, the Court is not satisfied that the Complaint adequately alleges facts showing that Defendant actually induced or procured 21st Century's breach of the same.  Specifically, the Complaint lacks any allegations that Defendant somehow induced 21st Century's failure to repay the notes at maturity.  The Complaint largely recites claims of wrongful means, fraud, misrepresentation, and concealment, rather than pleading concrete facts that establish that Defendant interfered with the contracts between Plaintiff and 21st Century, let alone facts that further establish that such interference was improper and resulted in damages.  (Compl. ¶¶ 113-118).  Further, the Complaint fails to establish the necessary causation as the Complaint does not allege that Defendant's conduct resulted in 21st Century's failure to repay, but rather cites conclusory allegations that Defendant's conduct caused Plaintiff

to delay enforcement of its claims. See Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (1997) (finding that the causation element of a tortious interference claim requires that the Plaintiff establish "that had there been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.")

Because the allegations in the Complaint are insufficient to support a reasonable inference of intentional and improper conduct, Count 4 is dismissed.

### v.  *Count 5: Conversion*

Plaintiff's conversion claim fails because, simply put, Plaintiff does not allege that a conversion occurred under the laws of New Jersey, Florida, or any state.  A claim for conversion requires that a defendant have "independent dominion and control over the subject property." Meisels v. Fox Rothschild LLP, 240 N.J. 286, 305 (2020); See also Edwards v. Landsman, 51 So. 3d 1208, 1213 (Fla. Dist. Ct. App. 2011) (stating that in order to state a claim for conversion of property, a plaintiff must show that the defendant "asserted dominion over that property.").  Here, Plaintiff's conversion claim is predicated on an alleged attempted transfer of $130,000 in 21st Century funds to Defendant, which, crucially, was never completed.  (Compl. ¶¶ 119-123).

Plaintiff explicitly pleads that Defendant never actually took possession of the $130,000 which it alleges Defendant attempted to improperly divert to his own account, because the attempted bank transfer was cancelled.  (Compl. ¶ 76).  Accordingly, Plaintiff's conversion claim fails.

### vi.  *Count 6: Aiding and Abetting Conversion*

Plaintiff's aiding and abetting conversion claim likewise fails.  Plaintiff's aiding and abetting conversion claim appears to be somewhat more expansive than its simple conversion claim.  Plaintiff predicates Count 6 on the attempted $130,000 transfer to Defendant, as well as

"the diversion of business operations, customer relationships, domains, goodwill, and proceeds away from 21st Century," by other individuals who are not parties to this suit, such as Castleberry and Huertas.  (Compl. ¶¶ 125-126).

To successfully plead a claim for aiding and abetting a tort, a plaintiff must plausibly allege that the underlying tort in fact occurred.  See Bell Container Corp. v. Palagonia Bakery Co. Inc., No. 19-6545, 2022 WL 2439532, at *4 (D.N.J. July 5, 2022) ("A claim for aiding and abetting fraud also requires proof of the underlying tort.").  To the extent Plaintiff grounds the aiding and abetting claim on the attempted $130,000 transfer to Defendant, it clearly fails because no, as stated above, no conversion event occurred with respect to that attempted transfer.

The Court next turns to Plaintiff's other alleged bases for aiding and abetting liability.

Plaintiff also alleges that its conversion claim includes "the diversion of business operations, customer relationships, domains, goodwill, and proceeds away from 21st Century," by other individuals who are not parties to this suit, such as Castleberry and Huertas.  (Compl. ¶ 126). As Defendant correctly argues, these allegations do not make out a claim for conversion either, nor do they identify how Defendant allegedly aided and abetted such conversion.

For an aiding and abetting claim, New Jersey courts require that the plaintiff must show "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (2008). The standard under Florida law is materially the same, requiring the plaintiff to allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in

-14-

committing the wrongdoing by the alleged aider and abettor." Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012). Again, because no conflict exists, New Jersey law applies.

Plaintiff's allegations are insufficient to state either a conversion claim or an aiding and abetting conversion claim. The Complaint fails to identify which property was converted or allege facts that connect Defendant to the alleged conversion. Rather, the Complaint merely offers conclusory allegations that certain assets and proceeds were diverted from 21st Century without identifying how Defendant aided and abetted such conduct. Accordingly, Count 6 is dismissed.

### vii.  *Count 7: Unjust Enrichment/Restitution*

Defendant argues that Count 7 alleging unjust enrichment should be dismissed because the Complaint does not allege that Defendant received any payment belonging to Plaintiff. (See Mot. at 16). The Complaint alleges that Defendant received or retained money, fees, or other economic benefits from Castleberry, 21st Century, and/or related entities in connection with the scheme, that the full nature and amount of those benefits are uniquely within Defendant's knowledge, and that Defendant stood as the intended recipient of the $130,000 transfer from 21st Century's account. (Compl. ¶¶ 134-136).

To state a claim for unjust enrichment, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant." EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 113 A.3d 775, 790 (App. Div. 2015) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994)). Florida law requires a showing that: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the

value thereof to the plaintiff." Taxinet Corp. v. Leon, 114 F.4th 1212, 1219 (11th Cir. 2024). Although a claim under New Jersey law also includes plaintiff's expectation of remuneration, the difference is not material to the issues presented here, thus New Jersey law applies.

Here, the Complaint does not allege that Defendant received any payment belonging to Plaintiff, nor that Plaintiff conferred a direct benefit to Defendant. Instead of allegations that Defendant received any money or benefits from Plaintiff, the Complaint alleges that Defendant received money or benefits from Castleberry, 21st Century, and other entities, thus failing to state a claim for unjust enrichment or restitution. In instances where a plaintiff fails to plead that it expected or anticipated renumeration from defendant, dismissal is warranted. Castro v. NYT Television, 370 N.J. Super. 282, 299-300 (App. Div. 2004).

Accordingly, because Plaintiff has failed to plead that it received any benefit from Defendant, or that it expected any renumeration because of the conferral of such benefit, Count 7 is dismissed.

### viii.    *Count 8: Declaratory Judgment and Injunctive Relief*

Defendant argues that Count 8 should be dismissed because it seeks adjudication of rights concerning parties that are not present, namely 21st Century. (See Mot. at 17). Defendant also argues that the only specific transaction alleged is an attempted $130,000 transfer that was stopped before completion, and the pleading does not identify any presently held asset in Defendant's possession for the Court to adjudicate. Id.

Plaintiff request for an injunction or declaratory relief hinges upon it having viable claims as described in Counts 1 to 7 which would support either injunctive or declaratory relief. Since both injunctions and declaratory relief are remedies and not independent causes of action, in as much as Plaintiff has failed in Count 1 to 7 to set forth any viable claims for relief, it necessarily

follows that Plaintiff's request for injunctive and declaratory relief must be dismissed. Additionally, Count 8 seeks adjudication of rights concerning parties that are not present, namely 21st Century.  Clearly, such relief cannot be granted.  Accordingly, Count 8 is dismissed.

### ix.  *Count 9: Accounting, Constructive Trust, and Equitable Lien*

Defendant argues that Count 9 seeking a cause of action for an accounting, constructive trust, and equitable lien should be dismissed because Plaintiff does not plead facts satisfying the elements for the relief it seeks.  (See Mot. at 18).  Defendant contends that Plaintiff has failed to identify any particular fund or property in Defendant's possession traceable to Plaintiff, thus its allegations are insufficient to support any of the remedies it seeks.  Id.

Seeking a constructive trust and equitable lien is merely a remedy predicated upon the claims set forth in Counts 1 to 7.  Once again, Count 9 must be dismissed because Plaintiff fails to describe any cognizable basis for a claim against Defendant in Counts 1 to 7.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is **GRANTED**, and the Amended Complaint is dismissed **without prejudice**.

\*       \*       \*

For these reasons,

**IT IS** on this 17th day of June, 2026

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 26) is **GRANTED**; Plaintiff is granted thirty (30) days from the day of this Order to file an Amended Complaint which cures the deficiencies outlined above.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

-17-