**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LER MANAGEMENT LLC,<br>Plaintiff, | : | **Civil Action No. 26-03002 (SRC)** |
| v. | : | **OPINION** |
| DANIEL HUFF,<br>Defendant. | : | |

**CHESLER**, District Judge

This matter comes before the Court on Defendant Daniel Huff's ("Defendant") motion to dismiss Plaintiff LER Management LLC's ("Plaintiff") Second Amended Complaint (Dkt. No. 36, "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) (Dkt. No. 42, "Motion"). Plaintiff field a brief in opposition to the Motion. (Dkt. No. 47, "Opposition"). Defendant filed a brief in reply. (Dkt. No. 48, "Reply"). For the following reasons, Defendant's Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges the following relevant facts. In September 2024, Plaintiff, a Florida LLC, made two loans totaling $1.5 million to 21st Century AEYE LCC ("21st Century"), a Texas LLC ("the Notes"). (Compl. ¶¶ 4-5, 59). The loans were secured by written security agreements granting Plaintiff a first-priority perfected security interest in substantially all of 21st Century's assets. (Id. ¶ 4). These agreements also contained provisions enumerating "Events of Default," the occurrence of which would permit Plaintiff to accelerate the loans and take immediate action

against 21st Century. (Id. ¶ 6). The Notes' maturity dates were September 10, 2025, and September 16, 2025. (Id. ¶ 5).

After growing concerns about the financial health and integrity of 21st Century, Plaintiff asked for an in-person meeting with 21st Century to discuss repayment, transparency, and collateral protection. (Id. ¶ 74). This meeting was attended by Plaintiff, Plaintiff's representative, Lisa Huertas, and Defendant, who Plaintiff alleges was acting on behalf of Brannon Castleberry and/or 21st Century. (Id.). Plaintiff alleges that prior to this July 10 meeting, it had acquired information and was ready to take pre-maturity action against 21st Century pursuant to the terms of the security agreements. (Id. ¶¶ 101, 106-07).

At this meeting, Defendant requested Plaintiff, along with other lenders, to extend the maturity dates of the Notes due in September 2025 and forbear any enforcement. (Id. ¶ 75). Defendant also made the following allegedly problematic statements regarding 21st Century's financial situation: (1) "we can pay any unhappy noteholder," (2) "cash is available now," (3) "repayment can be made upon demand," (4) the "business is healthy," and (5) the "pipeline is strong." (Id. ¶¶ 77-79). The crux of Plaintiff's Complaint is that Defendant made these statements knowing they were false and without fully contextualizing them by providing information about alleged fraud and diversion of funds occurring at 21st Century. (Id. ¶¶ 80-81, 84-89).

Plaintiff also alleges that after this meeting, Defendant engaged in further communications intended to negotiate an extension of the maturity dates of the loans Plaintiff had made. (Id. ¶¶ 92-99). Plaintiff never alleges that it agreed to extend maturity on the loans. Instead, Plaintiff alleges that "it postponed immediate pre-maturity default, acceleration, provisional-relief, preservation, and UCC measures that the Security Agreements made available after an Event of Default." (Id. ¶ 100). Notably, Plaintiff filed a lawsuit against 21st Century and related parties in

Florida state court on September 7, 2025, days before repayment of the loans were due. (Dkt. No. 26-3, Florida Complaint").

Plaintiff makes one other specific allegation against Defendant. According to the Complaint, on or about August 6, 2025, Defendant and Castleberry conspired to transfer assets from 21st Century's bank account to Defendant. (Compl. ¶¶ 37-38). However, the manager and owner of 21st Century intervened before any transfer could be completed, thus preventing any money from changing hands. (Id.).

Defendant filed his first motion to dismiss Plaintiff's first amended complaint for failure to state a claim on May 12, 2026. (Dkt. No. 26). This Court granted that motion to dismiss and gave Plaintiff 30 days to file an amended complaint. (Dkt. No. 35). Plaintiff filed the second amended complaint on July 17, 2026, (Dkt. No. 36), which Defendant moved to dismiss once again for failure to state a claim on July 31, 2026, (Dkt. 42).

## II. DISCUSSION

### a. Legal Standards[1]

Defendant asks this Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In short, to survive dismissal, "a civil complaint must contain

[1] Both parties rely on New Jersey law in arguing this Motion.

sufficient factual matter which plausibly alleges all required elements of a cause of action." Bresko v. Critchley, 2012 WL 3066640, at *4 (D.N.J. July 26, 2012). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. Iqbal, 556 U.S. at 678.

**b. Analysis**

The Court will consider the various arguments in Defendant's application as follows.

***i. Count 1: Common Law Fraud***

Defendant argues that Plaintiff's first claim, common law fraudulent inducement, should be dismissed. (See Mot. at 4-10). This claim is primarily predicated on the following statements allegedly made by Defendant at the July 10, 2025 meeting: "we can pay any unhappy noteholder," "cash is available now," the "business is healthy," the "pipeline is strong," and "repayment can be made upon demand." (Compl. ¶ 79). The claim is also rooted in Defendant's alleged failure to inform Plaintiff of certain facts relating to the fraud Plaintiff alleges occurred at 21st Century during the relevant period. (Id. ¶¶ 92-109).

To establish common law fraud in New Jersey, "a plaintiff must prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Walid v. Yolanda for Irene Couture, Inc., 40 A.3d 85, 90 (App. Div. 2012) (citations omitted). Plaintiff's fraud claim fails to plausibly allege the second, fourth, and fifth elements.

First, the Complaint does not plausibly allege that Defendant made these statements with the "knowledge or belief" of their falsity. Federal Rule of Civil Procedure 9(b) controls the

pleading standard for fraud claims, and it provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Though Rule 9(b) permits plaintiffs claiming fraud to plead scienter generally, "they must still allege specific facts that give rise to a strong inference that the defendant possessed the requisite intent." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) (citation omitted). This standard thus requires the Complaint to "describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity. City of Warren Police and Fire Retirement Sys. v. Prudential Fin., Inc., 70 F.4th 688, 680 (3d Cir. 2023).

Plaintiff primarily attempts to establish knowledge through the following allegations: that "Castleberry told Defendant that 21st Century could not repay Plaintiff"; that "Defendant knew that 21st Century did not have 'cash' 'available now' to repay Plaintiff based on Defendant's communications with Castleberry"; and that "Defendant was told by Castleberry and Huertas that 21st Century did not have the funds to repay plaintiff." (Compl. ¶¶ 84-86). These statements do not plausibly allege Defendant's knowledge because they are merely conclusory; they provide no specific facts to support the inference of knowledge. As Defendant notes in his Reply, these allegations "do not identify when the alleged communications occurred, where or how they occurred, what either person said, what financial information was conveyed, or why LER believes the communications occurred." (Reply at 5-6).

Plaintiff's other attempts to plausibly plead Defendant's knowledge are similarly insufficient. Plaintiff makes various allegations throughout the complaint that Castleberry and Huertas intended to prevent Plaintiff from exercising remedies and divert 21st Century's assets, see (Compl. ¶¶ 16-17, 21), but asserts no facts that make it plausible that Defendant knew of these

intentions. Further, the Complaint states that Defendant was not "an employee, officer, manager, accountant, or authorized bank signatory of 21st Century," (Compl. ¶ 83), and does not reference any other sources of information that Defendant had access to which could have provided the requisite knowledge. In its Opposition to Defendant's Motion, Plaintiff cites the Complaint's allegations concerning communications between 21st Century and Defendant that occurred on July 16, 2025, and July 26, 2025, as well as the attempted August 6, 2025 transfer, as supportive of Defendant's knowledge. (Op. at 11-13). But these communications and events all occurred *after* the July 10 meeting; therefore, they do not make it plausible that Defendant made the statements at the July 10 with "knowledge or belief" of their falsity. Absent alleged facts plausibly showing what information Defendant acquired and from whom he acquired that information, there is no basis to infer he had the requisite knowledge to sustain Plaintiff's fraud claim.

Second, Plaintiff fails to plausibly allege that it reasonably and detrimentally relied on Defendant's alleged misstatements. The Complaint states that, at the same July 10th meeting where Defendant made the allegedly fraudulent statements, Defendant also told Plaintiff "that 21st Century was trying to raise money from alternative sources to repay the Promissory Notes to Plaintiff and that 21st Century would need more time" to pay back Plaintiff, further "stating that it was unlikely that 21st Century could repay Plaintiff by the" Notes' maturity dates. (Compl. ¶ 9). "[R]eliance on a fraudulent misrepresentation is not justified if the recipient of the misrepresentation 'knows that it is false or its falsity is obvious to him.'" Walid, 40 A. 3d at 91 (quoting Restatement (Second) of Torts § 541 (1977)). Here, Defendant telling Plaintiff that 21st Century was unlikely to be able to meet the original maturity dates would have put it on notice that any statements suggesting present ability to repay were likely false. And Plaintiff's alleged reliance further appears unreasonable considering Plaintiff also alleges that it had acquired

knowledge and was prepared to take protective steps before the July 10 meeting, thus suggesting that it had a reasonable basis to believe that 21st Century was not in good financial health. Plaintiff could not have reasonably relied on Defendant's statements regarding 21st Century's financial health when it allegedly already had knowledge of collateral risks and Defendant told it that 21st Century was unlikely to be able to pay it back on time and needed an extension.

Plaintiff attempts to square this inconsistency by asserting that the seemingly conflicting statements "presented a choice between current payment to a demanding lender and broader refinancing for the lender group." (Op. at 17). But this assertion does not make Plaintiff's reliance reasonable. Plaintiff did not request immediate repayment; instead, it rejected the extension request and continued communications with 21st Century, relying on the original maturity dates, which Defendant stated 21st Century would not be able to meet. Plaintiff therefore could not have reasonably relied on Defendant's statements concerning 21st Century's financial health when it chose not to take immediate action.

Finally, Plaintiff fails to plausibly allege any proximate causation between Defendant's statements and Plaintiff's damages. Plaintiff admits that it did not do the very thing Defendant requested it do—extend the Notes' maturity dates—so it instead argues that it relied on Defendant's statements in deciding not to pursue pre-maturity relief. Plaintiff relies on Section 8 of the Security agreement, which "provided that, upon an event of default, the obligations became immediately due without notice or demand and the secured party could pursue specified remedies." (Op. at 14); (Compl. ¶¶ 66-67). Plaintiff alleges that it could have taken immediate action because "[b]y July 10, 2025, Plaintiff had identified facts supporting Events of Default" as outlined by the Security Agreements and was thus "prepared to take immediate protective steps," but chose not to after reassurance from the Defendant's statements at the meeting. (Compl. ¶¶ 72-73). However,

Plaintiff fails to plausibly allege that it knew of any facts constituting Events of Default at the time of the July 10 meeting and thus does not plausibly allege that Defendant's statements proximately caused it not to take action it was otherwise entitled to take.

Plaintiff provides a laundry list of actions by 21st Century and its members that would have impaired or threatened collateral and thus constitute an "Event of Default":

(a) FTSI Corp., a Texas corporation was formed on July 14, 2025 with Castleberry as its officer and director;
(b) another entity using the same FTSI Corp. name was formed in Texas on July 28, 2025;
(c) the customer-facing domain and traffic associated with Financial Technology Solutions International, owned by 21st Century were redirected to Castleberry's FTSI Corp.
(d) the attempted $130,000 transfer to Defendant occurred on August 6, 2025;
(e) El-Bilani was removed as an administrative contact from a customer-facing account on August 182025 by Castleberry; and
(f) Financial Technology Solutions International was renamed FTSI Corp. through an August 20, 2025 in the office of the Secretary of State of California signed by Castleberry and John De La Pena.

(Id. ¶ 106). But all these events occurred after the July 10 meeting, meaning that even if Plaintiff had learned of these actions as they occurred, they would not have supplied a basis for taking immediate action before the July 10 meeting. Beyond this enumerated list, Plaintiff's only allegation concerning its ability to take immediate action is that it "[b]y July 10, 2025, Plaintiff had identified facts supporting Events of Default." (Id. ¶ 72). This is a conclusory statement and thus not sufficient to survive a 12(b)(6) motion. As Defendant points out in his reply, "[t]he [Complaint] does not identify when LER would have filed, the particular default on which it would have relied, the specific property then available, the relief a court could have entered before the alleged transfer, or the amount of collateral that would have been preserved." (Reply at 10-11). In other words, the Complaint fails to plausibly allege that the Defendant's statements at the July 10 meeting caused Plaintiff any harm.

Therefore, because Plaintiff fails to plausibly allege Defendant's knowledge, reasonable reliance, and proximate causation in its fraudulent misrepresentation claim, this Court grants Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) with regard to that claim.

**ii. *Count 2: Negligent Misrepresentation***

Plaintiff pleads negligent misrepresentation in the alternative under Federal Rule of Civil Procedure 8(d). (Compl. ¶ 124). However, this claim also fails under the Rule 12(b)(6) standard. "In order to sustain a cause of action based on negligent misrepresentation, the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on that statement, and that reliance caused loss or injury." Masone v. Levine, 887 A.2d 1191, 1195 (App. Div. 2005). "The element of reliance is the same for fraud and negligent misrepresentation." Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2003). This claim also fails under the Rule 12(b)(6) standard, both for the reasons discussed *supra* on the reasonable reliance and causation elements and because Plaintiff does not plausibly allege the requisite special relationship between itself and Defendant to sustain the claim.

When it comes to negligent representation claims concerning economic loss, New Jersey law required there to be a special relationship between the defendant and plaintiff "from which a duty can be deemed to flow." City Check Cashing v. Mfrs. Hanover Tr. Co., 764 A.2d 411, 417 (N.J. 2001) (explaining this requirement in the context of such claims against financial institutions); see also Singer v. Beach Trading Co., Inc., 876 A.2d 885, 891 (App. Div. 2005) ("[T]he guiding principle for the imposition of liability is fairness to both the party making the representation and to the party aggrieved by its dissemination."). Plaintiff attempts to impose this duty upon Defendant based on its assertion that Defendant "voluntarily undertook" this role in

communicating with Plaintiff. (Comp. ¶ 125). But as Defendant correctly points out, "the factual allegations show only that [Defendant] participated in lender-extension communications concerning 21st Century's obligations, not that he assumed an independent duty to [Plaintiff] as a provider of reliable financial information." (Mot. at 12).

Ultimately, Plaintiff only alleges that Defendant communicated on behalf of 21st Century. (Compl. ¶ 7). The Complaint does not plausibly allege that there was a special relationship between the parties that created the requisite duty for a negligent misrepresentation claim, nor, as Defendant explains, does it "plausibly allege that Defendant invited Plaintiff to rely on him as an independent source" of the financial information provided. (Mot. at 13). Therefore, the parties did not have the kind of "special relationship" that can support a claim of negligent misrepresentation based on pure economic loss.

Because Plaintiff fails to plausibly allege that it had the requisite relationship with Defendant, as well as fails to plausibly allege the reliance and causation requirements for a negligent misrepresentation claim, this Court grants Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) with regard to that claim.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Second Amended Complaint is **GRANTED**, and the Amended Complaint is dismissed **with prejudice**.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.